

FILED by **KS** D.C.

**Sep 21, 2021**

ANGELA E. NOBLE
CLERK U.S. DIST. CT.
S.D. OF FLA. - MIAMI

## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA
## 21-60273-CR-WILLIAMS/VALLE
Case No. _____

18 U.S.C. § 1349
18 U.S.C. § 371
18 U.S.C. § 1347
42 U.S.C. § 1320a-7b(b)(2)(A)
18 U.S.C. § 1957(a)
18 U.S.C. § 982

UNITED STATES OF AMERICA

v.

PETER ROUSSONICOLOS and
KEVIN MCGOEY,

                     **Defendants.**

_____/

## INDICTMENT

The Grand Jury charges that:

## GENERAL ALLEGATIONS

At all times material to this Indictment:

### The Medicare Program

1.     The Medicare Program ("Medicare") was a federally funded program that provided free or below-cost health care benefits to certain individuals, primarily the elderly, blind, and disabled. The benefits available under Medicare were governed by federal statutes and regulations. The United States Department of Health and Human Services ("HHS"), through its agency, the Centers for Medicare and Medicaid Services ("CMS"), oversaw and administered Medicare. Individuals who received benefits under Medicare were commonly referred to as Medicare "beneficiaries."

2.     Medicare was subdivided into multiple program "parts."  Medicare Part A covered health services provided by hospitals, skilled nursing facilities, hospices, and home health agencies.   Medicare Part B covered physician services and outpatient care, including an individual's access to durable medical equipment ("DME"), such as orthotic devices and wheelchairs.

3.     Medicare was a "health care benefit program," as defined by Title 18, United States Code, Section 24(b), and a "Federal health care program," as defined by Title 42, United States Code, Section 1320a-7b(f).

## Durable Medical Equipment

4.     Orthotic devices were a type of DME that included rigid and semi-rigid devices, such as knee braces, back braces, shoulder braces, ankle braces, and wrist braces (collectively, "braces").

5.     DME suppliers, physicians, and other health care providers that provided services to Medicare beneficiaries were referred to as Medicare "providers."  To participate in Medicare, providers were required to submit an application, CMS Form 855S, which contained a certification that stated:

> I agree to abide by the Medicare laws, regulations and program instructions that apply to me or to the organization listed in Section 1B of this application.  The Medicare laws, regulations, and program instructions are available through the fee-for-service contractor.  I understand that payment of a claim by Medicare is conditioned upon the claim and the underlying transaction complying with such laws, regulations and program instructions[,] including, but not limited to, the Federal Anti-Kickback Statute, 42 U.S.C. section 1320a-7b(b)[.]
>
> I will not knowingly present or cause to be presented a false or fraudulent claim for payment by Medicare, and will not submit claims with deliberate ignorance or reckless disregard of their truth or falsity.

6.     CMS Form 855S also required applicants to disclose to Medicare any individual or organization with an ownership interest, partnership interest, or managing control of a DME supplier.  This included:  (i) all individuals and organizations with five percent or more of an ownership stake, either direct or indirect, in the DME supplier; (ii) all individuals or organizations with a partnership interest in the DME supplier, regardless of the partner's percentage of ownership; (iii) all organizations with "managing control" of the DME supplier; and (iv) all "managing employees."

7.     CMS Form 855S defined an organization with "managing control" of a DME supplier as "[a]ny organization that exercises operational or managerial control" over the DME supplier, or "conducts the day-to-day operations" of the DME supplier.  CMS Form 855S defined "managing employee" as "a general manager, business manager, administrator, director, or other individual who exercises operational or managerial control over, or who directly or indirectly conducts the day-to-day operations" of the DME supplier, "either under contract or through some other arrangement, whether or not the individual is a W-2 employee" of the DME supplier.

8.     CMS Form 855S also required the disclosure of "Adverse Legal Actions" against individuals or organizations with an ownership interest, partnership interest, or managing control of a DME supplier.  CMS Form 855S defined "Adverse Legal Actions" as, among other things, any federal or state felony conviction within the previous ten years, and any felony or misdemeanor conviction, under federal or state law, relating to the unlawful manufacture, distribution, prescription, or dispensing of a controlled substance.

9.     If Medicare approved a provider's application, Medicare assigned the provider a Medicare "provider number."  A health care provider with a Medicare provider number could file claims with Medicare to obtain reimbursement for services rendered to beneficiaries.

10.     Enrolled Medicare providers agreed to abide by the policies, procedures, rules, and regulations governing reimbursement.   To receive Medicare funds, enrolled providers were required to abide by the Federal Anti-Kickback Statute and other laws and regulations.   Providers were given access to Medicare manuals and services bulletins describing billing procedures, rules, and regulations.

11.     Medicare reimbursed DME companies and other health care providers for items and services rendered to beneficiaries.   To receive payment from Medicare, providers submitted or caused the submission of claims to Medicare electronically, either directly or through a billing company.

12.     A Medicare claim for DME reimbursement was required to set forth, among other things, the beneficiary's name and unique Medicare identification number, the DME provided to the beneficiary, the date the DME was provided, the cost of the DME, and the name and unique physician identification number of the physician who prescribed or ordered the equipment.

13.     A claim for DME submitted to Medicare qualified for reimbursement only if it was medically necessary for the treatment of the beneficiary's illness or injury and prescribed by a licensed medical professional.

## Telemedicine

14.     Telemedicine provided a means of connecting patients to doctors by using telecommunications technology, such as the internet or telephone, to interact with a patient.

15.     Telemedicine companies provided telemedicine services, or telehealth services, to individuals by hiring doctors or other health care providers.   Telemedicine companies typically paid doctors a fee to conduct consultations with patients.   In order to generate revenue,

telemedicine companies typically either billed insurance or received payment from patients who utilized the services of the telemedicine company.

16.     Medicare Part B covered expenses for specific telehealth services if certain requirements were met.  These requirements included that (a) the beneficiary was located in a rural or health professional shortage area; (b) services were delivered via an interactive audio and video telecommunications system; and (c) the beneficiary was in a practitioner's office or a specified medical facility—not at a beneficiary's home—during the telehealth service with a remote practitioner.  In or around March 2020, in response to the COVID-19 pandemic, some of these requirements were amended temporarily to, among other things, cover telehealth services for certain office and hospital visits, even if the beneficiary was not located in a rural area or a health professional shortage area and even if the telehealth services were furnished to beneficiaries in their home.

## The Defendants and Related Entities and Individuals

### The DME Companies

17.     Merchant Card Solutions LLC (d/b/a Med Brace Shop) ("Med Brace Shop") was a limited liability company formed under the laws of Virginia, with its principal place of business in Virginia Beach, Virginia.  Med Brace Shop was a DME supplier that provided braces to individuals, including Medicare beneficiaries.

18.     Med Braces and Supplies LLC ("Med Braces and Supplies") was a limited liability company formed under the laws of Florida, with its principal place of business in St. Lucie County, Florida.  Med Braces and Supplies was a DME supplier that provided braces to individuals, including Medicare beneficiaries, and held an account at SunTrust Bank ending in 7735 (the "Med Braces and Supplies Bank Account").

19.    A to Z Med Braces and Supplies Inc. ("A to Z Med Braces") was a company incorporated under the laws of Florida, with its principal place of business in Broward County, Florida.  A to Z Med Braces was a DME supplier that provided braces to individuals, including Medicare beneficiaries.

20.    Gemini Health & Wellness LLC ("Gemini") was a limited liability company formed under the laws of Florida, with its principal place of business in St. Lucie County, Florida. Gemini was a DME supplier that provided braces to individuals, including Medicare beneficiaries.

21.    Med2You Supplies, Inc. ("Med2You") was a company incorporated under the laws of Florida, with its principal place of business in Broward County, Florida.  Med2You was a DME supplier that purportedly provided braces to patients, including Medicare beneficiaries.

### Additional Entities

22.    Company 1 was a limited liability company formed under the laws of Florida, with its principal place of business in Broward County, Florida, and held an account at Bank of America ending in 2148 (the "Company 1 Bank Account").

23.    Goo World, LLC ("Goo World") was a limited liability company formed under the laws of Florida with its principal place of business in Broward County, Florida and held an account at TD Bank ending in 4309 (the "Goo World Bank Account").

24.    Kevin's Bail Bonds, Inc. ("Kevin's Bail Bonds") was a company incorporated under the laws of Florida with its principal place of business in Broward County, Florida.  Kevin's Bail Bonds was a corporation that provided bail bond services.

25.    Doctor Ride LLC ("Doctor Ride") was a limited liability company formed under the laws of Florida with its principal place of business in Broward County, Florida.

26.     LPI Media Group, Inc. ("LPI Media") was a company incorporated under the laws of Florida with its principal place of business in Palm Beach County, Florida.  LPI Media was a purported marketing company.

**The Defendants and Related Individuals**

27.     Defendant **PETER ROUSSONICOLOS** was a resident of St. Lucie County and a beneficial owner of Med Brace Shop, Med Braces and Supplies, A to Z Med Braces, Gemini, and Med2You.  **ROUSSONICOLOS** was also the manager of Goo World.

28.     Defendant **KEVIN MCGOEY** was a resident of Miami-Dade County, a nominee owner of Med Braces and Supplies, the president and director of Kevin's Bail Bonds, and a member and registered agent of Doctor Ride.

29.     Individual 1 was a resident of Broward County, a manager of Company 1, a beneficial owner of Med Braces and Supplies, A to Z Med Braces, Gemini, and Med2You, and an authorized member of Doctor Ride.

<u>**COUNT 1**</u>
**Conspiracy to Commit Health Care Fraud and Wire Fraud**
**(18 U.S.C. § 1349)**

1.     The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.     From in or around April 2018, and continuing through in or around November 2020, in Broward and St. Lucie Counties, in the Southern District of Florida, and elsewhere, the defendant,

**PETER ROUSSONICOLOS,**

did knowingly and willfully, that is, with the intent to further the objects of the conspiracy, combine, conspire, confederate, and agree with Individual 1 and others known and unknown to the Grand Jury, to commit offenses against the United States, that is:

      a.    to knowingly and willfully execute a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain, by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said health care benefit program, in connection with the delivery of and payment for health care benefits, items, and services, in violation of Title 18, United States Code, Section 1347; and

      b.    to knowingly, and with the intent to defraud, devise, and intend to devise, a scheme and artifice to defraud, and for obtaining money and property by means of materially false and fraudulent pretenses, representations, and promises, knowing the pretenses, representations, and promises were false and fraudulent when made, and for the purpose of executing the scheme and artifice, to knowingly transmit and cause to be transmitted by means of wire communication in interstate and foreign commerce, certain writings, signs, signals, pictures, and sounds, in violation of Title 18, United States Code, Section 1343.

<u>**Purpose of the Conspiracy**</u>

3.    It was a purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by, among other things: (a) offering and paying kickbacks and bribes in exchange for the referral of beneficiaries and doctors' orders for braces and other documentation necessary to submit claims to Medicare (collectively, "doctors' orders") through Med Brace Shop, Med Braces and Supplies, A to Z Med Braces, Gemini, and Med2You; (b) paying and causing the payment of kickbacks and bribes to telemedicine companies in exchange for

ordering and arranging for the ordering of braces for beneficiaries, without regard to the medical necessity of the prescribed braces or whether the braces were eligible for Medicare reimbursement; (c) submitting and causing the submission, via interstate wire communication, of false and fraudulent claims to Medicare through Med Brace Shop, Med Braces and Supplies, A to Z Med Braces, Gemini, and Med2You for braces that were not medically necessary and not eligible for Medicare reimbursement; (d) concealing and causing the concealment of false and fraudulent claims to Medicare; and (e) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

### Manner and Means

The manner and means by which the defendant and his co-conspirators sought to accomplish the objects and purpose of the conspiracy included, among other things:

4.     **PETER ROUSSONICOLOS** and other co-conspirators, including Individual 1, acquired beneficial ownership interests in DME suppliers, including Med Brace Shop, Med Braces and Supplies, A to Z Med Braces, Gemini, and Med2You.

5.     **PETER ROUSSONICOLOS** and other co-conspirators, including Individual 1, recruited and paid individuals, including **KEVIN MCGOEY**, to serve as nominee owners of DME suppliers, including Med Brace Shop, Med Braces and Supplies, A to Z Med Braces, Gemini, and Med2You, in order to conceal the identities of the beneficial owners of the DME suppliers.

6.     **PETER ROUSSONICOLOS**, Individual 1, and other co-conspirators paid and caused to be paid kickbacks and bribes to patient recruiters, including, but not limited to, LPI Media, in exchange for referring beneficiaries and doctors' orders for braces to Med Brace Shop, Med Braces and Supplies, A to Z Med Braces, Gemini, and Med2You.

7.     **PETER ROUSSONICOLOS**, Individual 1, and other co-conspirators negotiated the kickback and bribe arrangements, and disguised the nature and source of these kickbacks and bribes by concealing such payments as for legitimate services, such as "marketing" or "brand awareness" services, and entering into sham contracts.

8.     **PETER ROUSSONICOLOS**, Individual 1, and other co-conspirators offered and paid, and caused to be paid, illegal kickbacks and bribes to telemedicine companies in exchange for doctors' orders for braces that were not medically necessary and not eligible for Medicare reimbursement.  The orders were written by doctors contracted with the telemedicine companies who did not have a pre-existing doctor-patient relationship with the beneficiaries, were not treating the beneficiaries, did not conduct a physical examination, and did not conduct a proper telemedicine visit.

9.     **PETER ROUSSONICOLOS**, Individual 1, and other co-conspirators submitted, and caused the submission of, false and fraudulent claims to Medicare, through the use of interstate wire communications, on behalf of Med Brace Shop, Med Braces and Supplies, A to Z Med Braces, Gemini, and Med2You, totaling approximately $61,549,740, for DME that was not medically necessary and not eligible for reimbursement.   As a result of these false and fraudulent claims, Med Brace Shop, Med Braces and Supplies, A to Z Med Braces, Gemini, and Med2You received payment in the approximate amount of $26,720,364.

10.     **PETER ROUSSONICOLOS**, Individual 1, and other co-conspirators used the fraud proceeds received from Medicare to benefit themselves and others, and to further the fraud.

All in violation of Title 18, United States Code, Section 1349.

## COUNT 2
### Conspiracy to Defraud the United States
### (18 U.S.C. § 371)

1.      Paragraphs 1 through 16, 18, 22 through 25, and 27 through 29 of the General

Allegations section of this Indictment are re-alleged and incorporated by reference as though fully

set forth herein.

2.      From in or around February 2019, and continuing through in or around June 2020,

in Broward and St. Lucie Counties, in the Southern District of Florida, and elsewhere, the

defendants,

### PETER ROUSSONICOLOS and
### KEVIN MCGOEY,

did knowingly and willfully, that is, with the intent to further the object of the conspiracy, combine,

conspire, confederate, and agree with each other, Individual 1, and others known and unknown to

the Grand Jury, to defraud the United States by impairing, impeding, obstructing, and defeating

through deceitful and dishonest means, the lawful government functions of HHS and CMS in their

administration and oversight of Medicare.

### Purpose of the Conspiracy

3.      It was a purpose of the conspiracy for the defendants and their co-conspirators to

unlawfully enrich themselves by, among other things:  (a) falsifying and causing the falsification

of Medicare enrollment forms to conceal the true ownership of Med Braces and Supplies; (b)

submitting and causing the submission, via interstate wire communication, of false and fraudulent

claims to Medicare through Med Braces and Supplies; (c) concealing and causing the concealment

of false and fraudulent claims to Medicare; and (d) diverting fraud proceeds for their personal use

and benefit, the use and benefit of others, and to further the fraud.

11

## Manner and Means

The manner and means by which the defendants and their co-conspirators sought to accomplish the object and purpose of the conspiracy included, among other things, the following:

4.      **PETER ROUSSONICOLOS** and Individual 1 acquired beneficial ownership interests in Med Braces and Supplies.

5.      **PETER ROUSSONICOLOS** recruited **KEVIN MCGOEY** to serve as the nominee owner of Med Braces and Supplies in order to conceal the identities of the beneficial owners, including **ROUSSONICOLOS** and Individual 1, of Med Braces and Supplies.

6.      **KEVIN MCGOEY** falsified and caused the falsification of Medicare enrollment forms, bank records, corporate records, and other documents to conceal the true ownership and management of Med Braces and Supplies.

7.      In exchange for serving as the nominee owner of Med Braces and Supplies, **KEVIN MCGOEY** received a share of the reimbursements for DME billed to Medicare by Med Braces and Supplies, including through payments from Med Braces and Supplies to Kevin's Bail Bonds and Doctor Ride.

8.      **PETER ROUSSONICOLOS, KEVIN MCGOEY**, Individual 1, and other co-conspirators submitted, and caused the submission of, false and fraudulent claims to Medicare, through the use of interstate wire communications, on behalf of Med Braces and Supplies, totaling approximately $31,639,168 for DME. As a result of these false and fraudulent claims, Med Braces and Supplies received payment in the approximate amount of $12,510,515.

9.      **PETER ROUSSONICOLOS, KEVIN MCGOEY**, Individual 1, and other co-conspirators used the fraud proceeds received from Medicare to benefit themselves and others, and to further the fraud.

## **Overt Acts**

In furtherance of the conspiracy, and to accomplish its object and purpose, at least one co-conspirator committed and caused to be committed, in the Southern District of Florida, at least one of the following overt acts, among others:

1.     On or about March 27, 2019, at the direction of **PETER ROUSSONICOLOS**, **KEVIN MCGOEY** authorized a third-party consultant to sign **MCGOEY**'s name on CMS Form 855S, falsely certifying that, as of on or about February 1, 2019, **MCGOEY** was the sole owner and person with managing control of Med Braces and Supplies, when in fact **ROUSSONICOLOS** and Individual 1 were also beneficial owners and participated in managing Med Braces and Supplies.

2.     On or about June 21, 2019, **MCGOEY** signed check number 1053 in the approximate amount of $125,000, which was drawn on the Med Braces and Supplies Bank Account and made payable to Company 1.

3.     On or about June 21, 2019, Individual 1 signed check number 1001 in the approximate amount of $10,000, which was drawn on the Company 1 Bank Account and made payable to Goo World.

4.     On or about June 26, 2019, **KEVIN MCGOEY** signed check number 1060 in the approximate amount of $10,000, which was drawn on the Med Braces and Supplies Bank Account and made payable to Kevin's Bail Bonds.

All in violation of Title 18, United States Code, Section 371.

**COUNTS 3-7**
**Health Care Fraud**
**(18 U.S.C. § 1347)**

1.      The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.      From in or around April 2018, and continuing through in or around November 2020, in Broward and St. Lucie Counties, in the Southern District of Florida, and elsewhere, the defendant,

**PETER ROUSSONICOLOS,**

in connection with the delivery of and payment for health care benefits, items, and services, did knowingly and willfully execute, and attempt to execute, a scheme and artifice to defraud a health care benefit program affecting commerce, as defined in Title 18, United States Code, Section 24(b), that is, Medicare, and to obtain by means of materially false and fraudulent pretenses, representations, and promises, money and property owned by, and under the custody and control of, said healthcare benefit program.

**Purpose of the Scheme and Artifice**

3.      It was a purpose of the scheme and artifice for the defendant and his accomplices to unlawfully enrich themselves by, among other things:  (a) offering and paying kickbacks and bribes in exchange for the referral of beneficiaries and doctors' orders for braces to Med Brace Shop, Med Braces and Supplies, A to Z Med Braces, Gemini, and Med2You; (b) paying and causing the payment of kickbacks and bribes to telemedicine companies in exchange for ordering and arranging for the ordering of braces for beneficiaries, without regard to the medical necessity of the prescribed braces or whether the braces were eligible for Medicare reimbursement; (c) submitting and causing the submission, via interstate wire communication, of false and fraudulent

14

claims to Medicare through Med Brace Shop, Med Braces and Supplies, A to Z Med Braces, Gemini, and Med2You for braces that were not medically necessary and not eligible for Medicare reimbursement; (d) concealing and causing the concealment of false and fraudulent claims to Medicare; and (e) diverting fraud proceeds for their personal use and benefit, the use and benefit of others, and to further the fraud.

## The Scheme and Artifice

4.     The Manner and Means section of Count 1 of this Indictment is re-alleged and incorporated by reference as though fully set forth herein as a description of the scheme and artifice.

## Acts in Execution or Attempted Execution
## of the Scheme and Artifice

5.     On or about the dates set forth as to each count below, in Broward and St. Lucie Counties, in the Southern District of Florida and elsewhere, the defendant,

## PETER ROUSSONICOLOS,

did knowingly and willfully execute, and attempt to execute, the above-described scheme and artifice to defraud a health care benefit program affecting commerce, in that the defendant submitted and caused the submission of false and fraudulent claims, seeking the identified dollar amounts, and representing that such benefits, items, and services were medically necessary and eligible for Medicare reimbursement, as described below:

| Count | Beneficiary | Billing Entity | Approx. Date of Service | Claim No.; Product Codes | Total Approx. Amount Billed |
|---|---|---|---|---|---|
| 3 | A.S. | Med Braces and Supplies | 8/7/2019 | 19220723353000; L1690-RT | $2,509 |

| Count | Beneficiary | Billing Entity | Approx. Date of Service | Claim No.; Product Codes | Total Approx. Amount Billed |
|---|---|---|---|---|---|
| 4 | D.W. | Med Braces and Supplies | 8/16/2019 | 19231810668000; L1690-RT, L2624-RT | $3,012 |
| 5 | H.D. | Med Braces and Supplies | 8/26/2019 | 19242723049000; L1690, L2624-LT, L2624-RT | $3,515 |
| 6 | J.V. | Gemini | 4/15/2020 | 20107800808000; L0650, L1851-LT, L1851-RT, L2397-LT, L2397-RT | $4,041 |
| 7 | D.J. | A to Z Med Braces | 4/16/2020 | 20107771191000; L0650, L3960-RT | $2,537 |

In violation of Title 18, United States Code, Sections 1347 and 2.

## COUNT 8
### Conspiracy to Pay Health Care Kickbacks
### (18 U.S.C. § 371)

1.     The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.     From in or around April 2018, and continuing through in or around November 2020, in Broward and St. Lucie Counties, in the Southern District of Florida, and elsewhere, the defendant,

**PETER ROUSSONICOLOS,**

did knowingly and willfully, that is, with the intent to further the object of the conspiracy, combine, conspire, confederate, and agree with Individual 1, and others known and unknown to the Grand Jury to commit an offense against the United States, that is, to violate Title 42, United States Code, Section 1320a-7b(b)(2)(A), by knowingly and willfully offering and paying any remuneration, including kickbacks and bribes, directly and indirectly, overtly and covertly, in cash and in kind,

16

to a person to induce such person to refer an individual to a person for the furnishing and arranging for the furnishing of any item and service for which payment may be made in whole and in part by a Federal health care program, that is, Medicare.

## Purpose of the Conspiracy

3.      It was a purpose of the conspiracy for the defendant and his co-conspirators to unlawfully enrich themselves by, among other things:  (a) offering and paying kickbacks and bribes in exchange for the referral of beneficiaries and doctors' orders for braces to Med Brace Shop, Med Braces and Supplies, A to Z Med Braces, Gemini, and Med2You; (b) submitting and causing the submission of claims to Medicare through Med Brace Shop, Med Braces and Supplies, A to Z Med Braces, Gemini, and Med2You for Medicare beneficiaries and their doctors' orders that were obtained through kickbacks and bribes; (c) concealing and causing the concealment of kickbacks and bribes; and (d) diverting kickback and bribe proceeds for their personal use and benefit, the use and benefit of others, and to further the conspiracy.

## Manner and Means

The  manner  and  means  by  which  the  defendant  and  his  co-conspirators  sought  to accomplish the object and purpose of the conspiracy included, among other things, the following:

4.      **PETER ROUSSONICOLOS**, Individual 1, and other co-conspirators paid and caused to be paid kickbacks and bribes to patient recruiters, including, but not limited to, LPI Media, in exchange for referring beneficiaries and doctors' orders for braces to Med Brace Shop, Med Braces and Supplies, A to Z Med Braces, Gemini, and Med2You.

5.      **PETER ROUSSONICOLOS**, Individual 1, and other co-conspirators negotiated the kickback and bribe arrangements, and disguised the nature and source of these kickbacks and

17

bribes concealing such payments as for legitimate services, such as "marketing" or "brand awareness" services, and entering into sham contracts.

6.    **PETER ROUSSONICOLOS**, Individual 1, and other co-conspirators selected which of their DME companies would bill for the doctor's order.

7.    **PETER ROUSSONICOLOS**, Individual 1, and other co-conspirators submitted, and caused the submission of, claims to Medicare on behalf of Med Brace Shop, Med Braces and Supplies, A to Z Med Braces, Gemini, and Med2You, totaling approximately $61,549,740, for Medicare beneficiaries and their doctors' orders that were procured through kickbacks.  As a result of these claims, Med Brace Shop, Med Braces and Supplies, A to Z Med Braces, Gemini, and Med2You received payment in the approximate amount of $26,720,364.

8.    **PETER ROUSSONICOLOS**, Individual 1, and other co-conspirators used the proceeds received from Medicare to benefit themselves and others, and to further the conspiracy.

**Overt Acts**

In furtherance of the conspiracy, and to accomplish its object and purpose, at least one co-conspirator committed and caused to be committed, in the Southern District of Florida, at least one of the following overt acts, among others:

1.    On or about August 6, 2019, **PETER ROUSSONICOLOS** directed Individual 1 to transfer approximately $47,500 via wire transfer from the Company 1 Bank Account to LPI Media, which constituted a kickback payment for Medicare beneficiary referrals.

2.    On or about August 8, 2019, in exchange for kickback payments from **PETER ROUSSONICOLOS** and Individual 1, LPI Media referred Medicare beneficiary A.S. to Med Braces and Supplies for multiple braces.

3.      On or about August 8, 2019, **PETER ROUSSONICOLOS** and his co-conspirators caused Med Braces and Supplies to submit a claim to Medicare for a brace provided to beneficiary A.S., in the amount of approximately $2,509, approximately $1,513 of which was paid by Medicare on or about August 13, 2019.

4.      On or about August 10, 2019, **PETER ROUSSONICOLOS** directed Individual 1 to sign a Management Services Agreement between Company 1 and LPI Media, which falsely represented that LPI Media would provide "marketing" and "brand awareness" services, among other services, to Company 1 in exchange for a flat payment of $170,000 per week.  In reality, LPI Media supplied beneficiary referrals, including completed doctors' orders, for DME products to Company 1 in exchange for a payment of approximately $450 per beneficiary referral.

5.      On or about November 25, 2019, **PETER ROUSSONICOLOS** directed Individual 1 to transfer approximately $212,470 via wire transfer from the Company 1 Bank Account to LPI Media, which constituted a kickback payment for Medicare beneficiary referrals.

6.      On or about April 1, 2020, **PETER ROUSSONICOLOS** directed Individual 1 to transfer approximately $125,000 via wire transfer from the Company 1 Bank Account to LPI Media, which constituted a kickback payment for Medicare beneficiary referrals.

All in violation of Title 18, United States Code, Section 371.

## COUNTS 9-11
### Payment of Kickbacks in Connection with a Federal Health Care Program
### (42 U.S.C. § 1320a-7b(b)(2)(A))

1.      The General Allegations section of this Indictment is re-alleged and incorporated by reference as though fully set forth herein.

2.      On or about the dates enumerated below, in Broward and St. Lucie Counties, in the Southern District of Florida, and elsewhere, the defendant,

**PETER ROUSSONICOLOS,**

did knowingly and willfully offer and pay any remuneration, that is, kickbacks and bribes, directly

and indirectly, overtly and covertly, in cash and in kind, as set forth below, to a person, to induce

such person to refer an individual to a person for the furnishing and arranging for the furnishing

of any item and service for which payment may be made in whole and in part under a Federal

health care program, that is, Medicare:

| Count | Approx. Date of Kickback Payment | Approx. Amt. of Kickback Payment | Description of Kickback Payment |
|---|---|---|---|
| 9 | 8/6/2019 | $47,500 | Wire transfer from the Company 1 Bank Account, located in Broward County, to LPI Media. |
| 10 | 11/25/2019 | $212,470 | Wire transfer from the Company 1 Bank Account, located in Broward County, to LPI Media. |
| 11 | 4/1/2020 | $125,000 | Wire transfer from the Company 1 Bank Account, located in Broward County, to LPI Media. |

In violation of Title 42, United States Code, Section 1320a-7b(b)(2)(A) and Title 18,

United States Code, Section 2.

**COUNTS 12-15**
**Money Laundering**
**(18 U.S.C. § 1957(a))**

1.      The General Allegations section of this Indictment is re-alleged and incorporated

by reference as though fully set forth herein.

2.      On or about the dates set forth as to each count below, in Broward and St. Lucie

Counties, in the Southern District of Florida, and elsewhere, the defendants,

**PETER ROUSSONICOLOS and**
**KEVIN MCGOEY,**

did knowingly engage and attempt to engage in a monetary transaction affecting interstate and foreign commerce, by, through, and to a financial institution, in criminally derived property of a value greater than $10,000, and such property having been derived from specified unlawful activity, knowing that the property involved in the monetary transaction was derived from some form of unlawful activity:

| Count | Defendant | Approx. Date of Transaction | Approx. Amount of Transaction | Description of Monetary Transaction |
|---|---|---|---|---|
| 12 | **KEVIN MCGOEY** | 8/13/2019 | $20,000 | Check No. 1106 signed by **KEVIN MCGOEY** from the Med Braces and Supplies Bank Account, made payable to Kevin's Bail Bonds. |
| 13 | **KEVIN MCGOEY** | 11/8/2019 | $150,000 | Check no. 1170 signed by **KEVIN MCGOEY** from the Med Braces and Supplies Bank Account, made payable to Doctor Ride. |
| 14 | **PETER ROUSSONICOLOS** | 2/3/2020 | $20,000 | ACH transfer by **PETER ROUSSONICOLOS** from the Goo World Bank Account to account ending in 3653 at TD Bank held in the name of **PETER ROUSSONICOLOS.** |
| 15 | **PETER ROUSSONICOLOS** | 8/18/2020 | $49,412 | Wire transfer by **PETER ROUSSONICOLOS** from the Goo World Bank Account to an account at Piraeus Bank in Greece held in the name of **ROUSSONICOLOS.** |

It is further alleged that the specified unlawful activity is conspiracy to commit health care fraud and wire fraud, in violation of Title 18, United States Code, Section 1349; health care fraud, in violation of Title 18, United States Code, Section 1347; conspiracy to pay health care kickbacks, in violation of Title 18, United States Code, Section 371; and payment of kickbacks in connection

with a Federal health care program, in violation of Title 42, United States Code, Section 1320a-7b.

In violation of Title 18, United States Code, Sections 1957(a) and 2.

## FORFEITURE ALLEGATIONS
### (18 U.S.C. §§ 982(a)(1) and (a)(7))

1.      The allegations of this Indictment are re-alleged and by this reference fully incorporated herein for alleging criminal forfeiture to the United States of certain property in which the defendants, **PETER ROUSSONICOLOS** and **KEVIN MCGOEY**, have an interest.

2.      Upon conviction of a "Federal health care offense" or violation, as defined in Title 18, United States Code, Section 24, as alleged in this Indictment, the defendant so convicted shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(7), any property, real or personal, that constitutes or is derived, directly or indirectly, from gross proceeds traceable to the commission of such offense or violation.

3.      Upon a conviction of a violation of Title 18, United States Code, Section 1957(a), as alleged in this Indictment, the defendant so convicted shall forfeit to the United States, pursuant to Title 18, United States Code, Section 982(a)(1), any property, real or personal, involved in such violation, and any property traceable to such property.

All pursuant to Title 18, United States Code, Sections 982(a)(1) and 982(a)(7), and the procedures outlined at Title 21, United States Code, Section 853, as made applicable by Title 18, United States Code, Section 982(b)(1).

A TRUE BILL

FOREPERSON

JUAN ANTONIO GONZALEZ
ACTING UNITED STATES ATTORNEY
SOUTHERN DISTRICT OF FLORIDA

JOSEPH BEEMSTERBOER
ACTING CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

ALLAN MEDINA
DEPUTY CHIEF
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

JAMIE DE BOER
TRIAL ATTORNEY
CRIMINAL DIVISION, FRAUD SECTION
U.S. DEPARTMENT OF JUSTICE

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF FLORIDA

UNITED STATES OF AMERICA

v.

PETER ROUSSONICOLOS and
KEVIN MCGOEY,

_____ Defendants/

CASE NO. _____

**CERTIFICATE OF TRIAL ATTORNEY\***

**Superseding Case Information:**

**Court Division:** (Select One)

☐ Miami   ☐ Key West   ☑ FTL
☐ WPB     ☐ FTP

New defendant(s)   ☐ Yes   ☐ No
Number of new defendants   _____
Total number of counts   _____

1. I have carefully considered the allegations of the indictment, the number of defendants, the number of probable witnesses and the legal complexities of the Indictment/Information attached hereto.

2. I am aware that the information supplied on this statement will be relied upon by the Judges of this Court in setting their calendars and scheduling criminal trials under the mandate of the Speedy Trial Act,

   Title 28 U.S.C. Section 3161.

3. Interpreter: (Yes or No) **No** _____

   List language and/or dialect _____

4. This case will take __15__ days for the parties to try.

5. Please check appropriate category and type of offense listed below:

   (Check only one)
   I      0 to 5 days        ☐
   II     6 to 10 days       ☐
   III    11 to 20 days      ☑
   IV     21 to 60 days      ☐
   V      61 days and over   ☐

   (Check only one)
   Petty          ☐
   Minor          ☐
   Misdemeanor    ☐
   Felony         ☑

6. Has this case previously been filed in this District Court? (Yes or No) **No** _____

   If yes: Judge _____ Case No. _____

   (Attach copy of dispositive order)

   Has a complaint been filed in this matter? (Yes or No) **No** _____

   If yes: Magistrate Case No. _____

   Related miscellaneous numbers: _____

   Defendant(s) in federal custody as of _____

   Defendant(s) in state custody as of _____

   Rule 20 from the District of _____

   Is this a potential death penalty case? (Yes or No) **No** _____

7. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to August 9, 2013 (Mag. Judge Alicia O. Valle)? (Yes or No) **No** _____

8. Does this case originate from a matter pending in the Northern Region of the U.S. Attorney's Office prior to August 8, 2014 (Mag. Judge Shaniek Maynard)? (Yes or No) **No** _____

9. Does this case originate from a matter pending in the Central Region of the U.S. Attorney's Office prior to October 3, 2019 (Mag. Judge Jared Strauss)? (Yes or No) **No** _____

_____

JAMIE DE BOER
DOJ Trial Attorney
Court ID No.      A5502601

\*Penalty Sheet(s) attached                                                    REV 3/19/21

# UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF FLORIDA

### PENALTY SHEET

**Defendant's Name:**     **PETER ROUSSONICOLOS**

**Case No:** _____

Count #:   1

  Title 18, United States Code, Section 1349

  Conspiracy to Commit Health Care Fraud and Wire Fraud

**\*Max Penalty:**   Twenty (20) years' imprisonment

Count #:   2

  Title 18, United States Code, Section 371

  Conspiracy to Defraud the United States

**\*Max Penalty:**   Five (5) years' imprisonment

Counts #:   3 – 7

  Title 18, United States Code, Section 1347

  Health Care Fraud

\*Max Penalty:   Ten (10) years' imprisonment as to each count

Count #:   8

  Title 18, United States Code, Section 371

  Conspiracy to Pay Health Care Kickbacks

\*Max Penalty:   Five (5) years' imprisonment

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:**     **PETER ROUSSONICOLOS**

**Case No:**

Counts #:   9 – 11

   Title 42, United States Code, Section 1320a-7b(b)(2)(A)

   Payment of Kickbacks in Connection with a Federal Health Care Program

**\*Max Penalty:**    Ten (10) years' imprisonment as to each count

Counts #:   14 – 15

   Title 18, United States Code, Section 1957(a)

   Money Laundering

**\*Max Penalty:**    Ten (10) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**

# UNITED STATES DISTRICT COURT
# SOUTHERN DISTRICT OF FLORIDA

## PENALTY SHEET

**Defendant's Name:** _____ **KEVIN MCGOEY** _____

**Case No:** _____

Count #:   2

_____ Title 18, United States Code, Section 371 _____

_____ Conspiracy to Defraud the United States _____

**\*Max Penalty**:     Five (5) years' imprisonment

Counts #:   12 – 13

_____ Title 18, United States Code, Section 1957(a) _____

_____ Money Laundering _____

\*Max Penalty:     Ten (10) years' imprisonment as to each count

**\*Refers only to possible term of incarceration, does not include possible fines, restitution, special assessments, parole terms, or forfeitures that may be applicable.**